Pitching. Okay, the next case is number 07-1099, Magnola Metallurgy against the United States. Mr. Feldman. May it please the court, I'm Elliot Feldman of Baker & Hostetler, I'm appearing before you on behalf of Magnola Metallurgy and I'm accompanied by my partner, John Burke. We think this case presents to the court four issues. Whether the binding decision of the court in A.K. Steele indeed is still binding. Whether reliance on another determination for another period insulates the Department of Commerce from an appeal of its rationale for a legal finding. Whether a finding of disproportionality does not require a comparison of benefit distribution each time it is found, because specificity must be found in each review. And last, whether a decision of a NAFTA panel is entitled to treatment as res judicata. Does the statute require a new specificity ruling every time we have an administrative review? Requires a new finding every time because there's no other way to measure whether there is, what the margin should be without the finding that there is indeed specificity. And indeed, in this case, the Commerce Department says it found specificity in the administrative review and the briefs acknowledge that as well. What provision of the statute requires that it be considered de novo every time? Each review is an independent investigation or inquiry. What's the language of the statute that says it has to be a de novo determination every time? I don't have the statute before me, Your Honor, but the statute requires that each review has its own findings, has its own inquiry, has its own questionnaires, has its own administrative protective orders. Everything about the review is a separate and new proceeding. What makes it a freestanding duty in position? There's already a duty in place. So it seems that acknowledging the fact of a existing duty suggests you don't do the whole thing again. Now, you must find in the period of review that indeed there is something to countervail. In this case, we're dealing with countervailing duties. So you must find that there's some... We're reviewing. We're not re-installing. You're reviewing the order. And the order requires... But a review is different from an institution in the first place of a countervailing duty, isn't it? The language changes only in the sense that in an investigation you have a determination and in an administrative review you have results. But the results are the same proposition. You must find that there's something to countervail. But to use the court analogy for just a second, I understand we're in an administrative procedure. A review is different from an initial finding because it doesn't make findings. It just reviews the earlier findings. And I respectfully disagree, Your Honor. It does make findings and the Commerce Department acknowledges it makes findings in all of its reviews. It makes findings. It made a finding here. But it makes findings in the context of an order that's already in place. Nevertheless, the proceeding, especially first administrative review, because... But we still have a statute that doesn't require re-institution of a duty. We have a statute that leaves a great deal of discretion to the department to decide. Do we not? Not that much discretion, Your Honor. I don't think so. Because in a first administrative review, you in fact determine whether any duties are to be collected. That is, the first administrative review is because the law is prospective. And in its prospective character, the investigation doesn't in fact set what duties are to be collected. And the result of a first administrative review could be that no duties are to be collected. That commonly happens. But doesn't the statute require changed circumstances? Isn't that in the language of the statute? The changed circumstances are not in the language of the statute with respect to this question. But there are two issues here. One is with respect to evidence, which I think is what you may mean by changed circumstance. And that's the reliance that the Commerce Department has made on PPG, which was in fact the inverse of this question. What I'm going to do is to figure out what Congress said here. And the starting place for that is the language of the statute. And maybe you can borrow the language of the statute from your colleague. But we have to know what language you're relying on. Because you're arguing that the statute requires a de novo review every time. No, my argument is that this court made a decision about how to determine whether something is disproportionately large in a case deal. And the Commerce Department The question is what compels them to do a de novo every time. Because every time, it has always been their practice, and it is indeed required, they must What's the language of the statute? What's the language of the statute that says that? You know, you can't stand up there and not look at the statute. I mean, it's just a basic, you know, there may be a vague term in there that needs to be interpreted. But you're saying the statute compels us to order Commerce to do a new review every time and consider the specificity issue de novo. What's the language that tells us to do that? What I'm saying, Your Honor, if you'll excuse me a moment. But what I'm saying, Your Honor, is that the Commerce Department always makes a new finding of specificity and has done so in all of its determinations. In this instance, in this different review, the problem is not so much on the evidence but on the law. The original determination was wrong on the law based on a decision of this court. Now, if you'll excuse me just a second. The statute I'm reading in Section 751 shall review into A1A, sorry, 751A1A, after publication of notice of such review in the Federal Register, shall review and determine the amount of any net countervailable subsidy. That's a new finding and determination of the amount of a subsidy. There has to be a subsidy to determine an amount. And the Commerce Department has never disagreed with that proposition. It has to make a finding. And the briefs in this case all show that there has to be a finding that there is a countervailable subsidy in order to determine what the net countervailable subsidy is. That is true. We have seen that what has always looked very mysterious to me is that Commerce does do it over and over again. And I had always assumed that the idea was that perhaps something had changed. And that the distinction here, tell me if I'm reading your situation correctly, is that no one is saying that anything has changed because this goes back to the original determination before Magnolia was even in this business but where they inherited a 14-year amortization. They inherited the amortization. They inherited the order. But the determination of countervailability in the case of Magnolia derives from a new shipper review and a different program. Now, it's a program that the Commerce Department and its predecessor had found not countervailable but now found countervailable for the reason of disproportionate share. And the disproportionately large share in the Commerce Department analysis is contrary to law. The problem here in the question you raised about changed circumstance or new evidence to be presented is that there are two prongs to the standard of review, setting aside that the CIT used the wrong standard of review here and talked about abuse of discretion. The standard of review is an administrative review. The standard of review is substantial evidence and otherwise not in accordance with law. The notion of bringing forth new evidence applies only to the first prong as to whether there's substantial evidence. But here the error is one of law. The A.K. Steele test was rejected by Commerce in this case. But then you have to go back to the original determination, which was appealed to NAFTA, and that was the end of it. Well, excuse me, Your Honor, but it's not the end of it. NAFTA has no presidential authority, and the NAFTA panel in this case, as you may have observed, was divided two, two, and one, and the one that then constituted the majority recited a litany of reasons why the Commerce Department was wrong. So you want two bites of the apple? Not at all. You got a shot at NAFTA, and now you want to say, oh, well, but that doesn't count. We get to try the courts again. Well, that was our fourth question, Your Honor. Do you treat NAFTA as res judicata? Well, it's not whether you treat NAFTA as res judicata. It's whether the original Commerce decision can be reconsidered and reopened. We're not reopening. Commerce is not relying, as I understand it, on the NAFTA decision. It's relying on its own decision, which you elected to appeal to the NAFTA panel instead of the Court of International Trade. If I may correct you on a couple of points, Your Honor. First, it's not a question of election to the CIT in that case. The government of Quebec was involved. It's a policy of the government of Quebec, always under NAFTA, to go to a NAFTA panel. Any party chooses to go to NAFTA, it's removed to NAFTA. So there wasn't an option about going to the court. We opted here to come to court, and we persuaded the government of Quebec to stay out of the case so that we weren't obliged to go to a NAFTA panel. Secondly, the NAFTA panel has no authority of any kind with respect to res judicata or deciding a question in any definitive way. This is an exaggeration of the NAFTA panel's authority. Third, we're not interested in reopening the New Shipper Review. Those entries have been liquidated. That money is gone. This case is not about the New Shipper Review. It's about the rationale. But it is about the New Shipper Review because Congress is saying we're not going to reopen the questions that we decided in the New Shipper Review. You can say that you're not trying to reopen it, and it just becomes a matter of semantics. You're actually saying we're not bound by Congress's original determination of the New Shipper Review. We want them to consider this issue anew, in the course of this proceeding. It's not a semantic question, Your Honor. Had Congress set out in this determination, in the final results of this review, its rationale, surely it would be subject to appeal. Now instead what Congress said was, we've decided that already. It was already decided in some other review. We're not even going to articulate the rationale. But the rationale was contrary to law. So if they refer to that review, we're entitled to then say, what did you say in that review? That review's rationale is contrary to a binding decision of this court. So if you adhere to the proposition that it can't be reconsidered, then you've reversed yourself. Then a case deal is no longer a binding decision, and the Commerce Department has made new law about what constitutes a disproportionately large share of a program in which, in this case, the shares were exactly the same, the company received exactly the same share as every other company, and there were nearly 4,000 companies that participated. Okay, let's save your rebuttal time, and let's hear from the other side, Mr. Gordon. Thank you, Your Honor. Mr. Toder. May it please the Court. We respectfully request that the Court affirm the judgment of the Court of International Trade. In response to the point made by appellants that Commerce is making a new finding with respect to the counter-availability for each period of review, that's not quite correct. As they stated at page 53 of the Joint Appendix, it is their policy not to revisit specificity determinations made, as was the case here in the New Shipper Review, absent new evidence or a change in the law. And there was none presented to Commerce. But you're making a specificity finding every time regardless. The only specificity finding that they made... You may adopt the one from the prior time, but you're making some kind of specificity finding, right? Here there was a non-recurring benefit, which was completely analyzed during the New Shipper Review. Those benefits were received in 1998 and 2000. There were no new checks being written to Magnolia in 2003 that they were analyzing. All that they were doing was amortizing the useful life, the average useful life of that subsidy over a 14-year period. But you're relying on the earlier decision. I mean, that's why both sides seem to be fighting. I mean, that's what Commerce is doing. It's saying, we decided this question. We're going to rely on our earlier decision. We're not going to revisit it. The question is, is that lawful? It was within their discretion here. There's no language in the regulation that compels that result. I mean, it's made merely inference from the regulation. The question is really whether Commerce in interpreting the statute is not requiring re-examination during the administrator review is reasonably interpreting the statute. And we think that is a reasonable interpretation of the statute. But the decisions that have come to that interpretation are pretty summary. They don't really explain why the statute compels that result, at least the ones that I've read that were cited in the courts of this proceeding. I mean, they don't really explain it. They just say, we think it's good policy not to re-examine it. And as the Court of International Trade explained, there are good reasons behind that. One is efficiency and use of resources. Second is consistency, if you have the same inputs into the same equation. Those articulations did not come from Commerce. Commerce is, under Chevron, supposed to be making the determination. It's supposed to explain why its interpretation of the statute is reasonable. I found virtually no explanation, either in this case or any of the earlier cases that I read, that tells us why Commerce is interpreting the statute the way it is. In the PPG Industries case, for example, before this court, the inverse situation when Commerce chooses not to examine a program again, when it's found it not to be countervailable in the past, was found to be reasonable by this court. And the inverse of that, that when something is found to be countervailable, and then when in a new period or just the only change is it's a different year, but the same issue is involved and the same financial contributions from prior years are at issue, similarly, it's a reasonable application to say that the flip side of that, that if something was countervailable in a prior year and there's no new evidence that it would also be countervailable in this year, that's a reasonable application of Commerce's discretion. But they refuse to receive evidence, so how do they know? At first I thought that Commerce was saying, well, you chose to appeal to NAFTA, and that's the end of it. You could have done something else that might have given you more flexibility, but Commerce isn't relying at all on the NAFTA decision I gathered from your brief, other than to say, well, they ruled against you. The statute more or less dictates that that is the effect of the NAFTA panel decision, that it ends judicial review, but it's not binding on a future proceeding. However, only insofar as the issue that was specifically involved in that NAFTA proceeding, which is whether the New Shipper Review's finding of de facto specificity was supported by reasonable exercise of Commerce's discretion was proper. That issue is off the table. They're looking at, well, this is a different year, we have 2003 entries, but if the same issue was involved from before, and they don't present any new evidence, and they haven't pointed to any new evidence that they tried to submit here that might have changed things. They point to a live swine from Canada, reviewed by Commerce, where they said we did find new evidence, and therefore we're going to revisit the issue. They didn't present any such evidence here, therefore. We don't know, do we? At least from what we see in the briefs that Commerce just shut the door right at the threshold. They didn't point during the review period to any change in the economic conditions or in their business that would be classified as new evidence, and they haven't done so in their briefs. Mr. Toter, looking at the substance of this for a moment, the appellant in this case received the exact same 50% share as every other participant in the subsidy program, so there's no disproportionate benefit given to them, and they only received 2.3% of the entire program outlay, which is not a disproportionately large outlay. How do you say that that is conferring upon them some inordinate benefit? Well, first, under the AK Steele decision, Commerce has discretion in fitting their rules to a specific case. I'm asking you whether that discretion makes any sense in this case.  That was the issue before the NAFTA panel, which isn't here. However, even if the court were to look at that- But you're not relying on NAFTA, so you can't really- Those are the underlying facts. I'm trying to figure out why you think you made the right decision. We're not here to re-argue the new ship review, but even if the court were in the position of looking at it, even if the court were looking at it freshly for the 2003 period, which we don't think is the proper way to look at it, you'd have to look at Commerce's findings in the new shipper review. They found that despite the formulas- That's because they're the largest employer. You would expect them to receive more money than anybody else. That's still not disproportionate. What's going on? They found that on both a relative basis and an absolute basis, they received a larger share whether you excluded small companies from the analysis or included them. In every case, there's going to be bigger companies and smaller companies, but Commerce still has the discretion to find disproportionality on a factual basis. So you're saying it's bigger companies because they're bigger. That's what the statute says. It talks about disproportionality. Yes, and Commerce- What's disproportional about this? They looked at it on a relative to other companies and on an absolute basis. Suppose we were to conclude that the new shipper review decision in this respect is clearly wrong. Let's just accept my hypothetical. It's clearly wrong. Nothing can be done about that in the administrative review is what you're saying. We're saying that Commerce would have to have found to have abused its discretion not to reopen the issue and that it would have had to have recognized that this was so blatantly illegal that they had to reopen it. So if it was blatantly illegal, they'd have to reopen it? I believe we cited the Board of Locomotive Engineers case from the Supreme Court talking about the one-step removed level of review that an agency would have to undergo to conclude this, but there's no basis for that here. What's the test for reopening? Is blatantly wrong and not going to reopen? That wasn't the exact language that we were quoting. Such an appeal places before the courts precisely the same substance that could have been brought there by appeal from the original order, but asked them to review it on the strange one-step removed basis of whether the agency decision is not only unlawful, but so unlawful that the refusal to reconsider it is an abuse of discretion. Such an appeal serves no purpose, and that was in 488 U.S. at 278. So if it's blatantly wrong, they have to reconsider it, abuse of discretion, not to reconsider it? It would have to be so unlawful that the refusal to reconsider it was an abuse of discretion. And if it's blatantly wrong, does it satisfy that standard? We don't have any such finding here. We're asking you a hypothetical. In that hypothetical situation, at a minimum, they would have to consider the facts that were before them in this period of review to see if they were different in any way from those in the earlier period. There was no new evidence presented. Therefore, the evidence from the earlier period of review. I don't understand your answer. My hypothetical assumes no new evidence, but a blatantly wrong legal decision in the new shipper review. Can that be reopened? I can't speak to every hypothetical situation, but under the conditions of the hypothetical you're posing, the court would have to look at whether commerce abused its discretion and be reviewed on an abuse of discretion basis whether to reopen. Therefore, they would have the discretion to reopen, but it would have to be an abuse of discretion for them not to reopen it under your hypothetical. So you're not relying from your briefs, your response to similar arguments, not quite as forceful, perhaps, as Judge Dykes. Is it, well, they lost at NAFTA? They lost at NAFTA, which has the import of meaning that the absent new evidence or a change in the law or the other circumstances. NAFTA has nothing to do with new evidence. NAFTA was old evidence. Then commerce's policy is not to reopen decisions. I don't understand what NAFTA has to do with new evidence. NAFTA's relevance is that that issue was closed by the NAFTA panel decision. But you're not relying on it. You say neither as a matter of res judicata nor as a matter of substance nor as a matter of reasoning or anything else. I thought the government was saying NAFTA is NAFTA. It had to be appealed by the Canadian government. And since they didn't, there it is. It has nothing to do with us. Pursuant to statute, the NAFTA panel decision, in essence, replaced judicial review for that new ship of review. But you're not relying on it as being res judicata. As I recall your briefs, you do just the opposite. And, therefore, commerce's administrative decision, in which it laid out its reasoning and reflected commerce's policy, therefore is what they would have to find to have been incorrect based upon their factual findings. It's not a therefore, right? It's a non sequitur. You say we're not relying on NAFTA, therefore commerce doesn't have to review it? Commerce made findings in the new ship of review, and it's relying upon those. Commerce refused to review, saying there's no new evidence. It said we made a finding in the earlier proceeding, and now they're seeking to have us say that that earlier finding applied the same benefits, same years. We're just amortizing it over its useful life. And they're saying for this 2003 period, we're going to say that you have to reinvestigate that, as they would have to reinvestigate every countervailing subsidy in every year, potentially. That, and commerce said, that given our earlier finding on that, we are not going to reopen an issue of that nature absent some new evidence. Okay, but I thought that wasn't the standard you were arguing for. I thought you were saying that there could be an abuse of discretion, even if there wasn't any new evidence, if the original thing was so terribly wrong that it couldn't be justified. That was our statement on page 10 of our brief, yes. Okay, so but did commerce here make such a determination? Did it consider whether it should exercise its discretion to reopen? I don't see any evidence that it did. They did not. Their statement on page 53 of the appendix was their statement on the issue, which was it's just that they do not revisit absent new evidence, and certainly they didn't find anything that would change their mind, given what they... It sounds like an absolute rule to me, and you're standing up here and telling me that it isn't an absolute rule, but if commerce made a mistake and treated it like an absolute rule and it should have recognized that under extreme circumstances it has some discretion to reopen, don't we have to send it back to have them exercise that discretion? We would say no because they had already made that decision during the new shipper review, and it was the same issue involving the same subsidies that was at issue during the new shipper review that they were being asked to revisit in the 2003 administrative review, and they found no reason to do so. I see that I'm out of time. If the court has no more questions, we respectfully request that the court affirm the judgment of the Court of International Trade. Thank you, Mr. Taylor. Now, we've exhausted your colleagues' time as well. Mr. Taleb, is there anything that you want to add to what we've heard? No, Your Honor. I was going to cede my time to Mr. Taylor. Good. Okay. Thank you. Mr. Feldman. Thank you, Your Honor. The statute at 19 U.S.C. 1677, 5A.D. 3, requires the command to shall, requires the department to consider the longevity of a program when it's doing a review. The purpose behind this is that if a... 5A.D. Little 3. Little 3. You got it. Sorry. The requirement is because programs grow and develop and there are more participants. In this instance, although this was a successor program, it was also a new program, and it did grow in participants over time, and that growth in participants necessarily meant that the share that Magnola received, which was already, as you've all recognized, very, very small, further diluted. It got smaller. And that's a new fact, and that's new evidence, and the Commerce Department said it had discretion over that part of the statute and didn't have to consider the longevity of the program, notwithstanding the command of shall. I thought you conceded below that there wasn't any new evidence. Now you're standing up and arguing there is new evidence. No, we've never conceded that there was no new evidence, Your Honor, because we've always said that the longevity of the program was a requirement of the Commerce Department to consider, and it failed. It refused to consider it. And the reason you have to consider longevity of the program is because it changes the evidence. We've also always argued that the proportion changes in the period of review because the alleged benefit in the period of review is the amortized amount. And then, in the period of review, there are different recipients of benefits in the program getting different amounts. And if you're determining that you are the disproportionate recipient of benefits in the period of review, then you have to determine that, indeed, you are disproportionately receiving the benefits. That's a determination that depends on new evidence, and we asked for that to be done. So that's why I'm insisting that there are two prongs here, both in terms of the evidence and, more profoundly in our view, in terms of the law. But you're still talking about what happened in 2001. No, I'm not, Your Honor. I'm saying that during the period of review of 2003, the department, consistent with its practice, Your Honor, it raised the question of the statute, and rightly so, and I apologize if I seem to curtain response, because the statute refers simply to net countervailable subsidy. It is our view, and it has been the department's practice, always to find, to make a finding as to specificity. In this case, it said, but our rationale is a prior rationale upon which we're depending. We've said, now in 2003, that rationale has to be presented again. That's your finding. And that finding is incorrect with respect to A.K. Steele. But the only issue of new evidence to which this would relate would be the amortization schedule. No, also the growth of the program, which the statute requires be considered, and the department refused. But if the amortization, I realize the substance is not really before us, but if the amortization was correctly apportioned in 2001, then is it really of the nature of new evidence to say that things have changed, but it was correct when it started? Yes, that is, as in dumping reviews, in a period of review you may find that the prices have changed,  There's no dumping to be found. Here, too, you can find that there's no subsidy. In the live swine cases, the department focused on the too few users test, and in every administrative review reexamined how many users there were and what the universe was to determine whether there were too few users. It did it every time. And the same proposition is here. In the administrative review, if it's arguing that there's a disproportionately large share of benefits in the period of review, it has to establish that that's the case with the facts that pertain to the period of review. That's different from the period, in this case, two years prior, and necessarily different where there's a new program. But what you're asking would be that, retrospectively, the amortization schedule was wrong. And if, in fact, it were incorrect and were readjusted, it seems to me that it's unlikely that Magnolia would come out with a different net result than it's at now. No, two different propositions, Your Honor, and I'm sorry if I'm being obtuse. This argument has nothing to do with whether the amortization amount was correct in 2001. It simply says, whatever that amortization amount is in the period of review is the benefit. That's the alleged benefit. And that alleged benefit is that alleged benefit is disproportionately large with respect to the benefits received by others in the period of review. And that's really, but isn't that the government's position as to why, in fact, there is no new evidence? Because we're still talking about the situation that existed when all of this program, countervailing program, was put into effect. Well, I can't speak for the government's reasoning as to why there's no new evidence. Our position is that there is necessarily and always new evidence where there's a new program, and that's why the statute requires that that be examined as to its longevity and to the changes in the program in the period of review. The statute requires it. They didn't do it. And the statute requires it. Yes, and the statute requires it. It's in our briefs, Your Honor, which... Well, where in your brief here do you make that argument? This is in... That there is new evidence. This argument is at page 21. Oops, sorry. Oops, wrong pages. I just pulled this out moments ago, Your Honor, so I believe this is at page 54 of our case brief that this was a requirement to examine. That's where I just read you the statutory reference. It's page 54 of our initial brief. Then, Your Honor, Judge Newman, if I may, I said there were two issues here. One is not to question what the amortization was. It's that the Commerce Department assigned a certain benefit to a certain period, and that benefit, it says, is disproportionately large in that period, so we say that has to be measured. If you rejected that argument and said, we'll just go with the total amount of the alleged benefit from the beginning, prior to amortization, you still have to consider what that total amount looks like in the period of review with respect to the program and the other users, and that's a question of, is it disproportionately large, where, in a growing program, it's always getting smaller. Which would be in the mind of anyone who sets an amortization program. Well... One would hope, but therefore, what I'm suggesting is that if you relied only on the proposition that you need new facts, which is only one prong of the standard of review, then in an instance where there's a new program and it's changing, you always have new facts, necessarily, when you're examining specificity with respect to the too-few-users test or the disproportionately large test. And then, what we say is more profoundly a problem here, in which I think Judge Dyke has recognized in his questions, more profoundly, there is a violation of the law here. That is, the Commerce Department has reversed a case deal and then says, and we don't ever have to admit it or go back to it, we've made our determination. If you erase, as you were suggesting, Judge Newman, the NAFTA panel decision, then what's the basis for saying that the Commerce Department can make a determination and never has to revisit it when it's legally wrong? Okay. I think we have the argument. Thank you, Mr. Feldman. Thank you very much. Thank you, Mr. Toder. The case is taken under submission.